UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LANA GREEN,
AS PARENT OF DONNA GREEN,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT
OF EDUCATION,

Defendant.
-----------------------------------------------------------x

07 Civ. 1259 (PKC)

MEMORANDUM AND ORDER

P. KEVIN CASTEL, District Judge:

On February 20, 2007, plaintiff Lana Green commenced this action against the New York City Department of Education (the "DOE"), on behalf of her daughter, Donna Green, a child who is emotionally disturbed. Pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-45 (1999), plaintiff seeks review of the July 13, 2006 decision of an Impartial Hearing Officer (the "IHO") and the October 27, 2006 decision of the State Review Officer (the "SRO"), finding that, despite the DOE's failure to provide plaintiff's daughter with a Free Appropriate Public Education ("FAPE"), plaintiff was not entitled to receive tuition reimbursement for the private school that she had secured for her daughter for the 2005-06 school year. Defendant has cross-moved for summary judgment, contending that the decision of the SRO is correct and the Court should reach the same conclusion.

Based upon a preponderance of the evidence developed at the administrative proceeding and the further evidence presented by the parties, and with due weight to the state administrative proceedings, this Court concludes that plaintiff is not entitled to tuition

reimbursement. Summary judgment will be granted to defendant.

Statutory Background

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs [and] . . . to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A). A free appropriate public education "must include 'special education and related services' tailored to meet the unique needs of a particular child, and be 'reasonably calculated to enable the child to receive educational benefits." Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998) (quoting Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester Co. v. Rowley, 458 U.S. 176, 207 (1982)) (internal citation omitted). Such services must be administered according to an Individualized Education Plan ("IEP"), which includes "a comprehensive statement of the educational needs of a handicapped child and the specially designed instruction and related services to be employed to meet those needs." Sch. Comm. of Town of Burlington, Mass. v. Dept. of Educ. of the Commonwealth of Mass., 471 U.S. 359, 368 (1985). In New York, IEPs are developed by local Committees on Special Education ("CSE"). N.Y. Educ. Law § 4402(1)(b)(1); Walczak, 142 F.3d at 123 (citations omitted).

If the state fails to provide an appropriate education to a child with disabilities, the child's parents may, at their own financial risk, remove the child from the improper placement and enroll the child in an appropriate private school; the parents may then seek retroactive reimbursement for the cost of the private school from the state. See M.S. ex rel. S.S. v. Bd. of Educ. of the City Sch. Dist. of the City of Yonkers, 231 F.3d 96, 102 (2d Cir. 2000).

Under New York law, parents seeking reimbursement for a private placement may request a hearing before an IHO. N.Y. Educ. Law § 4404(1). The IHO's decision may be appealed to a SRO, N.Y. Educ. Law § 4404(2), and the SRO's decision may be challenged in either state or federal court, N.Y. Educ. Law § 4404(3).

Standard of Review

IDEA actions in federal court generally are resolved by summary judgment. See, e.g., Thies v. New York City Bd. of Educ., No. 07 Civ. 2000 (RMB), 2008 WL 344728, at *2 (S.D.N.Y. Feb. 4, 2008); J.R. v. Bd. of Educ. of City of Rye Sch. Dist., 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004). "[T]he role of the federal courts in reviewing state educational decisions under the IDEA is 'circumscribed.'" Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112 (2d Cir. 2007) (quoting Muller v. Comm. on Special Educ., 145 F.3d 95, 101 (2d Cir. 1998)) (additional citation omitted). When reviewing IDEA petitions, district courts must engage in an independent review of the administrative record and make a determination based on the "preponderance of the evidence developed at the administrative proceedings and any further evidence presented by the parties." Walczak, 142 F.3d at 122-23 (citing 20 U.S.C. § 1415(e)(2)); see Gagliardo, 489 F.3d at 112 (stating that federal courts must review the administrative proceedings under a preponderance of the evidence standard). The district court must examine the record for "objective evidence" that indicates whether the child is "likely to make progress or regress" in the parent's private placement. Frank G. v. Board of Educ. of Hyde Park, 459 F.3d 356, 364 (2d Cir. 2006) (quoting Walczak, 142 F.3d at 130), cert. denied, 128 S.Ct. 436 (2007). "However, this assessment 'is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of school authorities which they review.'" M.S., 231 F.3d at 102

(quoting Rowley, 458 U.S. at 206). To the contrary, federal courts are required to give "due weight" to state administrative proceedings under the IDEA, "mindful that the judiciary generally 'lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" M.S., 231 F.3d at 102 (quoting Walczak, 142 F.3d at 129); see also, Frank G., 459 F.3d at 367. "Deference is particularly appropriate when, as here, the state hearing officers' review has been thorough and careful." Walczak, 142 F.3d at 129.

Factual and Procedural Background

Plaintiff is the mother of Donna, who has been described as suffering from dysthymic disorder, which is a form of depression, disruptive behavior disorder and polysubstance abuse. (Tr. 20; Exs. E, G.) During the 2005-06 school year, for which plaintiff seeks reimbursement, Donna attended the Academy at Ivy Ridge ("Ivy Ridge"). (Tr. 8.) Ivy Ridge is a private residential facility for students with behavioral problems located 20 miles from the Canada and New York border. (Tr. 37, 131-32.) It is not licensed by New York State and is not authorized to issue diplomas. (Tr. 76-77, 86.)

Donna's difficulties began around age 12 while she attended I.S. 34. (Tr. 148; Ex. 7; Exs. F, G.) Donna started cutting classes, sleeping during classes, and failing to complete her schoolwork. (Ex. 7; Exs. E-G.) Donna became rude and offensive to school staff, had numerous conflicts with teachers and other students, and ran away from home several times. (Tr. 18-19; Ex. 7; Exs. E-G.) She began drinking alcohol and using illegal drugs. (Exs. E-G.) Plaintiff described Donna as aggressive, explosive and physically confrontational with her younger brother, her school peers, and with plaintiff. (Ex. F.) Plaintiff stated that Donna's guidance counselor at I.S. 34 engaged her in counseling, but noted no improvement. (Exs. F, G.) Donna

reported becoming progressively "more depressed," which led to her cutting herself and attempting suicide. (Ex. 7, Exs. E-G.)

Prior to these difficulties, Donna did not demonstrate any academic or behavioral difficulties, with the exception of extreme shyness and social withdrawal in elementary school, and she was an "A" student. (Tr. 147-48; Ex. 7; Ex. E.) Plaintiff reported that as a result of Donna's escalating academic, behavioral and emotional problems, she placed her at Ivy Ridge "on an emergency basis" in May 2004. (Ex. 7; Ex. E.)

Plaintiff first referred Donna to the CSE by letter dated August 8, 2005. (Ex. 1.) In the letter, plaintiff advised defendant that her daughter attended Ivy Ridge during the 2004-05 school year and she believed her daughter required special education services. (Id.) A psychological evaluation was conducted by a psychologist at the Pathways Lifecounseling Center ("Pathways") in September and October 2005. (Ex. E.) Donna received both individual and group counseling services from Pathways' providers during her attendance at Ivy Ridge. (Tr. 18-25; Ex. E.) The Pathways psychologist recommended that Donna continue her placement at Ivy Ridge. (Ex. E.)

Another psychiatric evaluation of Donna was conducted by a psychiatrist at Pathways on December 23, 2005. (Tr. 20-21; Ex. 6.) The evaluator recommended individual therapy, as well as substance abuse/sobriety group therapy. (Id.) The evaluator agreed that Donna would likely benefit from a controlled environment with 24-hour-per-day structure that is "drug free" and "education focused." (Ex. 6.)

A third psychiatric evaluation occurred on February 16, 2006. The psychiatrist noted that Donna made "very good progress since her arrival" at Ivy Ridge. (Ex. G.) He opined that Donna suffered "primarily from depression and substance abuse secondarily as a coping

mechanism for these intense emotional feelings of rejection." (Id.) He further opined that she met the criteria as a student with an emotional disturbance under the IDEA. (Id.) The psychiatrist indicated that Donna required a highly-structured residential placement with a "psychologically supportive milieu." (Id.)

The CSE convened for Donna's initial review on March 23, 2006 to determine her eligibility for special education programs and to prepare her IEP. (Ex. B.) With regard to academic performance and learning characteristics, the CSE noted that Donna presently performed at the tenth-grade instructional level in reading comprehension, written expression, math calculation, and oral expression. (Id.) The IEP documented that Donna suffered from low self-esteem, shyness, and withdrawal, and indicated that she required "non-stop supervision in a structured residential facility," due to her history of defiant behavior, emotional problems, suicide attempts, and school failure. (Id.)

The CSE classified Donna as a student with an emotional disturbance and recommended she be placed in a "full-time residential treatment program" and receive individual counseling one time per week for 60 minutes. (Id.) The IEP also contained goals and objectives related to Donna's math skills. (Id.) The CSE deferred the case to defendant's Central Based Support Team ("CBST") for residential placement. (Id.)

By letter dated March 23, 2006, plaintiff requested an impartial hearing alleging, among other things, that defendant failed to offer an appropriate program/placement for Donna for the 2005-06 school year. (Ex. A.) Plaintiff advised that Ivy Ridge was an appropriate placement for Donna, that she cooperated with the CSE, and that she was entitled to tuition reimbursement for Donna's attendance at Ivy Ridge for the 2005-06 school year. (Id.)

The hearing in this matter occurred on June 23, 2006. (IHO Decision.) At the

hearing before the IHO, plaintiff presented testimonial and documentary evidence. (Tr. 14-27, 35-47, 66-78, 103-121, 124, 125-47; Exs. A-O.) Defendant conceded that it failed to provide Donna with a FAPE for the 2005-06 school year, but contested that Ivy Ridge was an appropriate placement for Donna, relying upon cross-examination of plaintiff's witnesses and documentary evidence. (Tr. 10-13, 27-35, 47-66, 78-102, 122-25, 147-65, 170-71; Exs. 1-16; IHO Decision 5.)

At the hearing, the Director of Pathways testified that his counseling group rented space from Ivy Ridge and contracted with the facility to provide psychological and psychiatric services to the students through individual, group, and family counseling. (Tr. 16-17.) He described the typical student at Ivy Ridge as one with "behavioral difficulties." (Tr. 17). He stated that Donna had received individual, group and family counseling at Pathways and she also participated in the Self-Esteem Group for Girls, which she completed in the spring of 2005. (Tr. 22-23.) He further testified that he believed Donna made "good strides in her ability to manager [sic] her emotions." (Tr. 29.) With respect to the student's academics when she attended public school, he testified that he received information that she had "poor peer and family relationships" and she either did not like or did not want to go to school due to the "problems with her peers." (Tr. 34.)

The Director of Family Communications at Ivy Ridge testified that the students are assigned to "families," which consist of 18-24 students who are led by "family rep[resentative]s" and "dorm parent[s]." (Tr. 38, 42-43.) The students are not grouped according to age or grade, nor are they grouped by similar levels of academic functioning. (Tr. 42, 53.) "Family meetings" occur two times per day for an hour each session for students. (Tr. 42-43.) Students discuss the following five questions on a computer every day: (1) "What emotions did

you have today and how did you deal with them?"; (2) "What corrections did you receive today?"; (3) "Did you have any health issues today and if you're on any sort of medication did you take your medication today?"; (4) "Educationally what did you work on today?"; and (5) "Anything that they think we should be aware of that's going on with them or that they would like us to communicate with their parent?" (Tr. 43-44.) These questions are discussed at the morning meeting; the evening group discusses a more generic "how was your day today" question. (Id.)

The Director of Family Communications specifically testified that Ivy Ridge itself does not provide any other formal clinical or psychological services to the students. (Tr. 45.) If a parent wants a student to receive counseling, the parent directly arranges for those services to be provided by Pathways. (Id.) Moreover, information about students may be shared between the two facilities, but only to the extent allowable by the Health Insurance Portability and Accountability Act. (Tr. 45-46.) Ivy Ridge staff may be aware of a student's clinical services, but only if the student or parents choose to provide that information. (Tr. 46.)

The Academic Coordinator at Ivy Ridge (the "Coordinator") testified that Ivy Ridge is "a school for students who are experiencing social maladjustment disorders" or who have "emotional problems." (Tr. 69-70.) She indicated that students typically enroll in Ivy Ridge as a result of "substance abuse, constant fighting with peers," and "basically just general disrespect to authority and parents," and further testified that Ivy Ridge was "a way to save a child from ending up in a juvenile detention center." (Tr. 82.)

The Coordinator further testified that she understood that Donna was "not here because she's not capable of doing the work, it is because of her behavioral problems." (Tr. 74.) She noted that Donna was currently passing all of her subjects and maintained an overall GPA of

3.23 out of a possible 4.0. (Tr. 74-75.) When asked to describe the special education programs at Ivy Ridge, the Coordinator testified that it consists basically of the students following a "self-paced, self-learning" environment that the students advances through "as they want." (Tr. 87.) She testified that therapeutic services are provided through Pathways. (Tr. 99-100.) She noted that students who arrive at Ivy Ridge with IEPs are "not our specialty," but that Ivy Ridge does review students' IEPs and participate in IEP reviews. (Tr. 88.)

In addition, the Coordinator testified that a teacher comes into a class for about one hour per day to present the lesson of the day. (Tr. 95.) The students receive the teacher's email address, so if they have a question they can email it to the teacher. (Id.) The students then work on the computer at their own pace for six hours per day, six days per week. (Tr. 96.) Students can sign up for extra help from teachers; however, the Coordinator testified that students are encouraged to sign up for extra help and to obtain a tutor through an outside agency called Bright Minds. (Tr. 88, 95.) Tutors assist students on the premises of Ivy Ridge, but are obtained privately through a separate contract between the parent and tutoring agency. (Tr. 91.)

Donna also testified at the hearing (Tr. 103-25.) She explained that her program at Ivy Ridge is structured throughout the day and begins at seven o'clock in the morning. (Tr. 106.) Following morning group sessions, students participate in classes for the remainder of the morning and again in the afternoon. (Tr. 106-08.) Donna described the classes, noting that the students go to the computer lab as a unit, are seated, and complete lessons independently on the computer. (Tr. 108.) She testified that the teachers at Ivy Ridge sit at their own computers during a lesson and only assist students when students request help. (Tr. 122-23.) She noted that the teachers do not give presentations for instruction in front of the class. (Tr. 123.) She testified that she had a personal tutor for geometry who sat with her at the computer to provide

assistance. (Tr. 110-11.) Students also attend "labs," which are available nearly every day for 1 to 1 1/2 hours. (Tr. 109.) The students watch an "educational video" daily; the videos provide examples of real-life situations and individuals' negative reactions to those situations, as well as examples of the other choices available. (Tr. 111-12.)

By decision dated July 13, 2006, the IHO denied plaintiff's request to be reimbursed for the costs of her daughter's tuition at Ivy Ridge during the 2005-06 school year because she found that plaintiff did not sustain her burden of proving that Ivy Ridge was an appropriate placement for her daughter. (IHO Decision 5-7.) Plaintiff appealed the IHO's decision to a SRO, contending that the IHO erred when she determined that Ivy Ridge was not appropriate to meet Donna's special education needs because the record does not support the IHO's findings. (Ex. Q.) The SRO reviewed the record and concluded that it did not establish that Ivy Ridge was appropriate to meet Donna's special education needs for the 2005-06 school year, and that plaintiff was therefore not entitled to tuition reimbursement. (SRO Decision.) On February 20, 2007, plaintiff filed the complaint in this action, seeking tuition reimbursement for the 2005-06 school year.

Discussion

A court may award tuition reimbursement "if it appears (1) that the proposed IEP was inadequate to afford the child an appropriate public education, and (2) that the private education services obtained by the parents were appropriate to the child's needs." Walczak, 142 F.3d at 129 (citing Burlington, 471 U.S. at 370); see also Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 15 (1993). Because defendant has conceded that it failed to provide the student with a FAPE for the 2005-06 school year, the only question before the Court is whether

the private education services obtained by plaintiff were appropriate to Donna's needs. (Tr. 10-13; 170-71; Cmplt. ¶ 31; SRO Decision.)

"Subject to certain limited exceptions, 'the same considerations and criteria that apply in determining whether the [s]chool [d]istrict's placement is appropriate, should be considered in determining the appropriateness of the parents' placement . . . . [T]he issue turns on whether a placement – public or private – is reasonably calculated to enable the child to receive educational benefits." Gagliardo, 489 F.3d at 112 (quoting Frank G., 459 F.3d at 364) (alterations in original). A private placement meeting this standard is one that is "likely to produce progress, not regression." Walczak, 142 F.3d at 130 (citation omitted).

Plaintiff has submitted two pieces of evidence which were not part of the administrative record – evaluations from the Summit School, which is the school Donna attended after she left Ivy Ridge, and articles about an unrelated lawsuit brought by Ivy Ridge in state court contesting the defendant's refusal to certify Ivy Ridge. (Exs. X, Y.) I have considered the additional evidence submitted by plaintiff on the question of whether Ivy Ridge was an appropriate placement for Donna. Both items of evidence are marginally relevant to the appropriateness of the placement and are entitled to little weight. Considering the entire record, including this additional evidence, I reach the same conclusion as the SRO.

The SRO found that Ivy Ridge was an inappropriate alternative placement for Donna because plaintiff failed to demonstrate that the school addressed Donna's special education needs during the 2005-06 school year. He based this finding on evidence that Donna was not appropriately grouped and that she was not provided with specially-designed instruction or programs, as well as evidence that she was not provided with any clinical or psychological

services to address her social and emotional needs through Ivy Ridge. There is no objective evidence in the record that leads me to a different conclusion than that reached by the SRO.

Ivy Ridge did not provide the special education services specifically needed by Donna. From a description of the program, the needs of the students at Ivy Ridge appear to vary greatly. When asked about the school's special education programs, Ivy Ridge's own Academic Coordinator generally described the "self-paced, self-learning" nature of the academic program and the availability of tutors from the outside tutoring agency. (Tr. 87-88.) A school does not necessarily need to have teachers certified in special education in order for it to be appropriate to meet a child's needs. Carter, 510 U.S. at 14. However, in order for the parent's private placement to be appropriate under Rowley, it must provide "educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from instruction." Frank G., 459 F.3d at 364.

Ivy Ridge did not provide Donna with math assistance or counseling services. Plaintiff concluded that Donna needed those services and chose to obtain them directly with outside agencies. It is appropriate for the hearing officers and the Court to take these circumstances into consideration. See e.g., Gagliardo, 489 F.3d at 114 ("[the school] did not have a staff [trained in dealing with anxiety disorders], and while [the student's] private therapy may have been able to help him after school, it was not available throughout the school day"); Thies, 2008 WL 344728 at *3 (noting defendant's argument that the child's special education needs were met, not through the school, but through supplemental private counseling and therapeutic services, and concluding that plaintiff had not demonstrated that the private placement was appropriate).

Plaintiff points to evidence in the record of Donna's progress at Ivy Ridge. The evidence in the record that Donna made significant academic and emotional progress during the time she was enrolled at Ivy Ridge is certainly relevant to the question of whether Donna received educational benefit. See Gagliardo, 489 F.3d at 115. However, "progress does not itself demonstrate that a private placement was appropriate." Id. "Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs." Frank G., 459 F.3d at 364-65 (citation omitted); see also, id. at 356 (quoting Rowley, 458 U.S. at 207) ("No one factor is necessarily dispositive in determining whether parents' unilateral placement is 'reasonably calculated to enable the child to receive educational benefits.'")

Both the IHO and the SRO considered the evidence relating to Donna's progress, and nonetheless concluded that Ivy Ridge was not an appropriate placement for Donna in light of the totality of the circumstances in the record. Furthermore, the SRO concluded that the progress Donna did achieve was directly attributable to the supplemental math tutor and the Pathways counselors, rather than any specially-designed program at Ivy Ridge. Plaintiff does not dispute that the math tutor and the Pathways counselors were significant contributors to Donna's success. I have considered the entire record, as supplemented, and reach the same conclusion as the SRO.

Plaintiff also points to the psychiatric evaluations in the record, and insists that the IHO and the SRO did not consider the recommendations of the evaluators that Donna attend a highly-structured "education focused" residential facility with a "psychologically supportive milieu." However, the SRO cited to this evidence in his decision, and I have afforded his consideration of this evidence the weight it deserves. See Gagliardo, 489 F.3d at 114 (the district court erred

when it substituted "its own view" for that of the SRO regarding an evaluator's recommendation that the student be placed in a "therapeutic or supportive" environment.) On the record before me, I reach the same conclusion as the SRO, that Ivy Ridge did not provide Donna with the special education services she required.

I have also considered the fact that Ivy Ridge provided the student with a drug-free "locked down" environment located nine to ten hours from her home. Though failure of a parent to place the student in the 'least restrictive environment' possible is not a bar to tuition reimbursement, it is a factor which may be considered by the hearing officers and the Court. M.S., 231 F.3d at 102. I conclude that, on this record, this factor is entitled to very little weight in either direction.

Plaintiff argues that defendant presented no witnesses at the hearing, instead relying on assertions by counsel for the defendant as to the appropriateness of the private school placement. However, it is plaintiff who bears the burden of proving that the school was appropriate to her child's needs, and defendant is not obligated to put on witnesses or submit rebuttal evidence. See Gagliardo, 489 F.3d at 112 (noting that the party who commences the impartial hearing bears the burden of persuasion on both Burlington factors) (citing Schaffer v. Weast, 546 U.S. 49, 57-58 (2005) and M.S., 231 F.3d at 104). Nor is defense counsel prohibited from making comments on the record regarding the credibility of plaintiff's witnesses and the appropriateness of the private school placement.

This case presents an issue arising under a statute which allows, under certain circumstances, for tuition reimbursement. This Court is not asked to pass upon the wisdom or sincerity of the parental judgments made for Donna which may well have been sound as parental judgments. Based upon an independent review of the administrative record and the additional

judgments. Based upon an independent review of the administrative record and the additional evidence, and giving due weight to the educational policy judgments of school authorities, I conclude that Ivy Ridge was not an appropriate placement within the meaning of the statute.

Summary judgment is granted in favor of defendants and the complaint is dismissed.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
March 31, 2008